In the Interest of A.K.S., a Child.

No. 09–86–218 CV.

Court of Appeals of Texas,
Beaumont.

April 30, 1987.

Hal Hemstreet, Staff Counsel for In-
mates, Texas Dept. of Corrections, Sugar
Land, for appellant.

Mike Fielder, Dayton, for appellee.

OPINION·

DIES, Chief Justice.

This is a suit for involuntary termination
of parental rights. As authorized by Sec-
tion 11.19(d)[1] of the Texas Family Code,
we will identify the parties by their initials.

In 1971, Petitioner, R.E.V., and his wife
agreed to become foster parents for a large
children's home in Houston. During the
ensuing years, they had some twelve chil-
dren, as such, in their home. In August,
1981, A.K.S., a five-month-old girl, so came
to them. In 1983, the child's mother came
to Petitioner and his wife requesting that
they adopt the child, and agreeing to give
up all parental rights, which she later did
by written instrument. Later Petitioner
and his wife filed a petition to terminate
the parent-child relationship of the child
and her biological parents. The biological
father, D.A.V., contested the petition. On
August 15, 1986, the trial court terminated
the parental rights of Respondent, D.A.V.,
on the basis of Section 15.02(1)(E)[2] of the
Texas Family Code, and that it was in the

---

1. *TEX.FAM.CODE ANN. sec. 11.19(d)* (Vernon
1986), "Appeal", provides: "On the motion of
the parties or on its own motion the appellate
court in its opinion may identify the parties by
fictitious names or by their initials only."

2. *TEX.FAM.CODE ANN. sec. 15.02(1)(E)* (Vernon
1986) provides termination of parental rights
may be granted if the court finds the parent has
"engaged in conduct or knowingly placed the
child with persons who engaged in conduct
which endangers the physical or emotional well-
being of the child."

best interest of the child to do so. From this decree, Respondent, D.A.V., has perfected appeal to this Court.

In Texas, the section of the Family Code referred to in footnote 2 lists various findings authorizing a trial court to terminate a parent-child relationship, and also requires that such termination be in the best interest of the child [Section 15.-02(2)]. Section 11.15(b) of the Code requires that the finding "must be based on clear and convincing evidence." Both elements, subdivisions (1) and (2), of Section 15.02 must be established because a court has no authority to terminate a parent-child relationship only because it would be in the best interest of the child. *Wiley v. Spratlan*, 543 S.W.2d 349, 351 (Tex.1976). Further, termination of the parent-child relationship must be based on "the most solid and substantial reasons." *Wiley, supra,* at 352, quoting *State v. Deaton*, 93 Tex. 243, 54 S.W. 901 (1900). There is a strong presumption that a minor's best interest is usually served by keeping custody in the natural parents. *Wiley, supra,* at 352, and cited authorities.

Petitioner has a college degree, is theologically trained, is a Pastor, part-time teacher, and a school bus driver. His wife has college training, teaches music, and cleans up the church. They have three other children, one married, one a student at Texas A & M University, and one at home. The record shows Petitioner(s) love and provide A.K.S., the child here involved, with a wonderful and loving home. The child knows no other parents.

Respondent, D.A.V., is incarcerated for a long period of time for the rape of a woman he did not know. Among his many other problems, the one that concerns us the most is his past history of compulsive exhibition of his genitals to females. He frankly admits he does not know if this disease will return when he leaves prison or not.

We recognize that imprisonment, of and by itself, does not constitute the conduct described in paragraph (E) of Section 15.02(1) of the Family Code we quote herein. *H.W.J. v. State Dept. of Public Welfare*, 543 S.W.2d 9, 11 (Tex.Civ.App.—Texarkana 1976, no writ); *Mayfield v. Smith*, 608 S.W.2d 767, 771 (Tex.Civ.App.—Tyler 1980, no writ); *Boyd v. Texas Dept. of Human Services*, 715 S.W.2d 711, 716 (Tex.App.—Austin 1986) [3], *reversed,* 727 S.W.2d 531 (Tex.1987).

Respondent relies heavily on the Court of Appeals' opinion in *Boyd, supra,* which decision was reversed by the Texas Supreme Court after the instant case came before this Court. In *Boyd,* the Supreme Court held that the Court of Appeals was in error in stating that endangerment of the child is not inferable from parental misconduct alone. *Id.* at 533. The Supreme Court also held that "endanger", as the term is used in Section 15.02(1)(E), means "to expose to loss or injury; to jeopardize." Finally, the Supreme Court held that "if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of the child, a finding under section 15.02(1)(E) is supportable." Frankly, we can think of few problems that would be more certainly dangerous to the emotional well-being of a child than the knowledge that his or her father had a compulsion to exhibit his genitals to women. We hold that the evidence, including Respondent's imprisonment, the type of crime for which he was so imprisoned, and his compulsion to exhibit his genitals to women is clear and convincing proof that Respondent's conduct endangers the child. We overrule the sole point of error of Respondent, and affirm the judgment, or decree of the court below.

The dissenting opinion of my colleague prompts these additional remarks:

If the dissent is adopted in this case, the Respondent, D.A.V., will be given physical possession of this child on his release from prison. *TEX.FAM.CODE ANN. sec. 12.-04(1)* (Vernon 1986). Therefore, these additional facts should, we think, be seriously

---

**3.** Note 1 of the Court of Appeals' opinion in *Boyd, supra,* has an excellent collection of cases which discuss what constitutes "danger" under Section 15.02 of the Texas Family Code.

considered in deciding whether there is "clear and convincing evidence" to support the trial court's decision.

The sexual assault (or rape as Respondent refers to it) on an unknown (to him) female was accomplished by Respondent's breaking into her apartment while she was asleep. He admits to having emotional and mental instability (which he attributes to childhood beatings by his father). Both before and after the child's birth in 1981 he was exposing himself (he paid a fine for such two months after the child was born). He was asked on July 7, 1986 (at the time of the hearing): "Do I understand you correctly that you feel like you no longer have this problem?" To which he replied, "I may still have and I may not. I'm unsure."

It is incorrect to say he is being treated. His testimony was, "All I know is that they're supposed to start group counseling sessions and some type of therapy sessions...." He was asked "So you have had no counseling that you feel like has been of benefit to you?" His answer, "None." He has had prior convictions for disorderly conduct (several), window peeping, trespassing, possession of marihuana. The last led to revocation of parole and sentence to the Texas Department of Corrections (July 21, 1977). Late in 1981, he tried to kill himself by cutting his throat. Since he has been in prison he has been disciplined (including solitary confinement) for at least one major and several minor infractions.

This child is in a good home and a good environment. It is absolutely inconceivable that in view of Respondent's problems (for which we are sorry) that anyone would risk changing this child's status by reversing a trial judge who saw, as well as heard, the witnesses testify. If we understand our dissenting brother properly, his position is that this conduct would have to be directed "towards the mother, a sibling or another child" to be clear and convincing evidence that the father engaged in conduct which endangers the physical or emotional well-being of the child. We reject this as being unsound and dangerous. If a parent unmistakably has problems which likely would endanger the physical or emotional well-being of a child, and if it clearly is in the best interest of the child to terminate the parent-child relationship (which we all agree here), this should be enough.

AFFIRMED.

BURGESS, Justice, dissenting.

I reluctantly dissent. My dissent is reluctant because the termination is probably in the best interest of the child. Nevertheless, this determination, standing alone, is not sufficient. *Wiley v. Spratlan*, 543 S.W.2d 349 (Tex.1976).

I find no clear and convincing *evidence* that the father has "engaged in conduct which endangers the physical or emotional well-being of the child." The majority states, "Frankly, we can think of few problems that would be more certainly dangerous to the emotional well-being of a child than the knowledge that his or her father had a compulsion to exhibit his genitals to women." I heartedly agree with that statement, however, I do not find any evidence to support such a proposition.

The father admitted that he had, prior to the child's birth, engaged in voyeurism of and exhibitionism to adult women. Further, when the child was one-month old, he committed a sexual assault on an adult female for which he is currently imprisoned. He also testified that a program recently began at the Texas Department of Corrections for counseling and therapy for sexual offenders. Petitioners presented no other evidence concerning these emotional or mental disorders. They presented no evidence on whether or not these disorders were incurable, likely to recur, etc. Likewise, they presented no evidence that the child had any present knowledge or that the child's future knowledge of such acts would cause her emotional stress. *See* and *compare Clark v. Clark*, 705 S.W.2d 218 (Tex.App.—Dallas 1985, writ dism'd) where experts testified on such matters and the act was the murder of a half-sister.

*In the Interest of B.J.B.*, 546 S.W.2d 674 (Tex.Civ.App.—Texarkana 1977, writ ref'd n.r.e.) holds that expert testimony is not indispensable and that the fact finder

might reasonably conclude from common knowledge and experience that certain acts (the murder of the mother) themselves might create fear and anxieties and thus constitute conduct which endangers the emotional well-being of a child. This was decided, however, prior to the "clear and convincing evidence" standard adopted by *In Interest of G.M.* 596 S.W.2d 846 (Tex. 1980) now codified in *TEX.FAM.CODE ANN. sec. 11.15(b)* (Vernon 1986).

I agree with our Supreme Court's holding that danger can be inferred from parental conduct. Acts of misconduct directed towards the mother, a sibling or another child, can certainly be a course of conduct from which danger can be inferred. Those types of acts, coupled with the inference would, in most instances constitute clear and convincing evidence.

However, in the instant case, I do not feel that the inference, without more, constitutes clear and convincing evidence. I would, reluctantly, reverse and remand for consideration of the conservatorship issues.