893 S.W.2d 243 (1995)
Antonio TREVINO, Appellant
v.
The TEXAS DEPARTMENT OF PROTECTIVE AND REGULATORY SERVICES, Appellee.
No. 03-93-00470-CV.
Court of Appeals of Texas, Austin.
February 8, 1995.
*246 Gary A. Calabrese, Austin, signed brief for appellant.
Ronald Earle, Dist. Atty. and Robert Smith, Asst. Dist. Atty., Austin, signed brief, for appellee.
Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.
CARROLL, Chief Justice.
The Texas Department of Human Services[1] (the "Department"), appellee, brought a suit affecting the parent-child relationship to terminate the parental rights of appellant Antonio Trevino and his common-law wife, Christina Lopez. Pursuant to a jury verdict that appellant's parental rights should be terminated, the district court ordered the requested relief. See Tex.Fam.Code Ann. § 15.02 (West Supp.1995). We will affirm the trial-court judgment.

BACKGROUND
The Department brought a suit to terminate the parent-child relationship between appellant and his three young children, Josephine Lopez, Antonio Lopez (hereinafter "Tony"), and Michelle Trevino, on May 31, 1991. The Department took the children into protective custody because their mother, Christina Lopez, abused the two older children, Josephine and Tony, and abandoned them on the evening of May 28, 1991 on a public street in East Austin. At the time of the incident, appellant had been in prison for over two years.
Christina Lopez was a party to the termination suit, but she voluntarily relinquished her parental rights shortly before trial. The Department argued at trial that the relationship between appellant and his children should be terminated pursuant to section 15.02 of the Texas Family Code. Section 15.02 provides:
(a) [A] petition requesting termination of the parent-child relationship with respect to a parent who is not the petitioner may be granted if the court finds that:
(1) the parent has:
. . . .
(D) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child; or
(E) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child; ...
. . . .
(M) ... and in addition, the court further finds that
(2) termination is in the best interest of the child.
Tex.Fam.Code Ann. § 15.02. To support a trial court's judgment, the petitioner must prove that the parent engaged in conduct described in section 15.02(a)(1) and that it was in the best interest of the child to terminate the parental rights. The trial court has no authority to terminate a parent-child relationship solely because it would be in the best interest of the child. Wiley v. Spratlan, 543 S.W.2d 349, 351 (Tex.1976).
The case was tried before a jury, which rendered a verdict in favor of the Department. Accordingly, the trial court signed a final decree terminating appellant's parental rights to his children. In its final decree of termination, the court found that appellant knowingly placed or knowingly allowed the *247 children to remain in conditions or surroundings that endangered their physical or emotional well-being, that appellant engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being, and that termination was in the best interest of the children.

DISCUSSION
By four points of error, appellant contends that the district court erred by: (1) informing the venire panel of the nature of appellant's prior conviction and incarceration for serious bodily injury to a child; (2) admitting evidence of the nature of appellant's conviction for serious bodily injury to a child, the judgment and underlying facts of the conviction, and the confession by appellant that resulted in the conviction; (3) basing its judgment on legally and factually insufficient evidence supporting the jury's answer that appellant's parental rights should be terminated; and (4) failing to find that appellant should be named possessory conservator of the children as such failure was contrary to the overwhelming weight and preponderance of the evidence.
A. Appellant's Prior Conviction and Incarceration
In July 1989, appellant was arrested for causing injury that resulted in the death of a child named Leon Lopez, the nephew of appellant's wife, who had been entrusted to the care of appellant and his wife. Appellant was convicted of a first-degree felony for serious bodily injury to a child and sentenced to life. At the time the Department filed its petition to terminate the parent-child relationship, appellant was imprisoned at the Texas Department of Corrections, where he continues to reside. In two points of error, appellant contends that the court erred in revealing the nature of his conviction and incarceration to the venire panel and in admitting evidence of such during the trial.
We first address appellant's second point of error. Appellant objected to the admissibility of all evidence relating to the nature of his conviction and the reason for his incarceration, the judgment and underlying facts of his conviction, and his signed confession on the grounds that such evidence was extremely inflammatory and irrelevant and that the prejudicial effect of the evidence outweighed any probative value. The trial court overruled appellant's objections and allowed him a running objection to all such evidence. The court then allowed the Department to call appellant as an adverse witness, elicit information concerning his conviction, and offer into evidence appellant's signed confession, which describes in detail the events leading to the death of young Leon.[2]
The Department sued to terminate appellant's parental rights under subsections (1)(D) and (1)(E) of section 15.02(a), which requires the Department to prove by clear and convincing evidence that appellant's acts or omissions endangered the children.[3] The supreme court has interpreted endanger for purposes of section 15.02: "While we agree that `endanger' means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal family environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury." Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex.1987).
Evidence of imprisonment alone is not sufficient grounds to support the inference that the parent's conduct endangered the children. However, "if the evidence, including the imprisonment, shows a course of conduct which has the effect of endangering the physical or emotional well-being of a child, a finding under section 15.02(a)(1)(E) is supportable." Id. at 534; see also Harris v. Herbers, 838 S.W.2d 938, 942-43 (Tex.App. Houston [1st Dist.] 1992, no writ) (determining that the evidence, including appellant's imprisonment and drug use, indicated a course of conduct that endangered his children). *248 Applying the Boyd standard, the Beaumont Court of Appeals determined that evidence of a father's imprisonment combined with the type of crime for which he was imprisonedrapeand his compulsion to exhibit his genitals to women "is clear and convincing proof that Respondent's conduct endangers the child." In re A.K.S., 736 S.W.2d 145, 146 (Tex.App.Beaumont 1987, no writ).
Appellant admitted at trial that he frequently used drugs and that he was on drugs at the time Leon was injured. The Department offered testimony at trial that appellant used and sold drugs out of his apartment while his children were in the apartment. Appellant also testified that he had always treated Leon like one of his own and conceded that he was responsible for caring for the child. In light of these circumstances, appellant's actions relating to the death of a young child not much older than his own children are highly relevant to whether appellant's children were endangered by his course of conduct. The trial court explained the relevance of appellant's confession: "Mr. Trevino is seeking custody of children, his children.... Th[e] statement [the confession] is very indicative of how he handles children's behavior, and goes directly on point to what he feels, in his behavior, in the care of infants. And it's highly relevant." This rationale applies to all other evidence surrounding appellant's conviction.
Even the dissent in A.K.S. recognized that acts of misconduct directed towards another child can support a finding that the parent engaged in a course of conduct that endangered his own children:
I agree with our Supreme Court's holding that danger can be inferred from parental conduct. Acts of misconduct directed towards the mother, a sibling, or another child, can certainly be a course of conduct from which danger can be inferred. Those types of acts, coupled with the inference would, in most instances constitute clear and convincing evidence.
Id. at 148 (Burgess, J., dissenting) (emphasis added); see also In re B.J.B. & C.E.B., 546 S.W.2d 674, 677 (Tex.Civ.App.Texarkana 1977, writ ref'd n.r.e.) ("[T]he father's demonstrated want for self control and propensity for aggression and vicious, cruel, brutal violence against one who did not conform to his will projected a threat that might reasonably be construed as endangering the physical well-being of children in his care, custody, and control."). We conclude that the evidence relating to the death of Leon was relevant to the issue of endangerment.
Evidence of appellant's conviction and incarceration is also relevant to the best interest prong of the section 15.02 test. In Holley v. Adams, 544 S.W.2d 367 (Tex.1976), the supreme court held that a number of factors may be examined in ascertaining the best interest of a child: (1) the emotional and physical danger to the child now and in the future; (2) the parental abilities of the individuals seeking custody; (3) the stability of the home and the proposed placement; and (4) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one. Id. at 371-72. We have determined that appellant's criminal conduct and imprisonment are relevant to these factors. See In re B.J.B., 546 S.W.2d at 677 (holding that evidence of the father's conduct in stabbing the children's mother "alleged to endanger the children's physical and emotional well-being, is pertinent to and entwined in the issue of the children's best interest").
Appellant contends that even if the evidence is relevant, it should not have been admitted because its probative value was outweighed by the prejudicial effect of the evidence. It is true that the confession and the facts surrounding the death of Leon constitute evidence that is inherently inflammatory and prejudicial; however, Texas Rule of Civil Evidence 403 requires that relevant evidence must be substantially outweighed by the danger of unfair prejudice to be excluded. Tex.R.Civ.Evid. 403. Because of the severe consequences of applying Rule 403the exclusion of relevant evidencethe application of the rule "is an extraordinary remedy that must be used sparingly." LSR Joint Venture No. 2 v. Callewart, 837 S.W.2d 693, 698 (Tex.App.Dallas 1992, writ denied).
*249 "In weighing the prejudice, the court must first examine the necessity for and probative effect of the evidence." Id. As we discussed earlier, Boyd stands for the proposition that a criminal course of conduct that has the effect of endangering a child's physical or emotional well-being is sufficient to support termination of parental rights. Boyd, 727 S.W.2d at 534. Boyd also mandates that imprisonment alone does not constitute sufficient evidence of endangerment. Id. It necessarily follows that in order to establish that a parent engaged in a criminal course of conduct that endangered a child, the circumstances surrounding the imprisonment must be brought into play. The well being and best interest of three small children lay at the heart of the district court's determination and must remain the focal point of our consideration. We thus conclude that the prejudicial effect of the highly relevant evidence relating to Leon's death is not unfair nor does it substantially outweigh probative value of the evidence. The evidence was therefore admissible.
Even assuming arguendo that the court erred in admitting evidence of the facts surrounding Leon's death and appellant's confession because such evidence unnecessarily inflamed the prejudice of the jury, we still conclude that this error is not sufficient grounds for reversal of the trial court's order. To reverse a judgment based upon an erroneous evidentiary ruling, the court must review the evidence in light of the entire record to determine if "the whole case turns on the particular evidence ... admitted." Dudley v. Humana Hosp. Corp., 817 S.W.2d 124, 126 (Tex.App.Houston [14th Dist.] 1991, no writ). Aside from the evidence that appellant caused the death of Leon, there was other evidence that appellant engaged in a course of conduct that endangered his children. The testimony of appellant's wife and her brother Victor established that appellant had a violent temper and lacked self-control; Christina testified that appellant pushed her when she was pregnant, pulled a gun on her, smashed furniture in their apartment, and stabbed a man in the back; there was also testimony that appellant taught Victor, a teenager at the time, how to use drugs; additional testimony revealed appellant's inability to hold down a job, his drug use, drug addiction, and drug dealing out of his home while he lived with his children. From this evidence, the jury could conclude that appellant engaged in a course of conduct that endangered the physical or emotional well-being of his children. Accordingly, we overrule appellant's second point of error.
We next address appellant's first point of error that the trial court improperly informed the venire panel of the nature of appellant's conviction and incarceration. Before the beginning of trial, appellant filed a motion in limine seeking to prevent any evidence or underlying facts relating to his 1989 arrest, conviction, and confession on grounds that such evidence was irrelevant and that any probative value was substantially outweighed by its prejudicial effect. The trial court signed an order granting the motion. Pursuant to the order, both the Department and appellant refrained from any mention of the nature of appellant's conviction or reason for his incarceration during voir dire examination. Appellant's counsel informed the jury only of the fact that appellant was in prison, not the reason for his imprisonment. However, after both parties had completed their voir dire examination, the trial court reversed its position on the motion in limine and decided that the court would inform the panel of the nature of appellant's conviction and incarceration so that counsel could examine the panel on those issues.
Appellant contends that the trial court's actions constitute reversible error in several respects. Appellant argues that the trial court abused its discretion in reversing the ruling on the motion in limine because the court's reversal discredited appellant and his trial counsel in the eyes of the panel. However, a motion in limine is designed solely to require an offering party to approach the bench and inquire into the admissibility of the evidence at issue before introducing that evidence to the jury. See Hartford Accident & Indem. Co. v. McCardell, 369 S.W.2d 331, 335 (Tex.1963). The granting or denial of a motion in limine has no bearing on the ultimate admissibility of the evidence and *250 is never reversible error. Id. ("[A]lthough the overruling of a motion in limine may be error, it is never reversible error."). It logically follows that a court should be free to change its mind on a ruling on a motion in limine as the court did in this case. Accord Luce v. United States, 469 U.S. 38, 40-41, 105 S.Ct. 460, 462-63, 83 L.Ed.2d 443 (1984) ("[T]he district judge is free, in the exercise of sound judicial discretion, to alter a previous in limine ruling.").
Appellant further contends that the trial court's explanation to the jury about the nature of appellant's conviction was an instruction to the jury on a matter of fact before the trial began and that the instruction amounted to evidence adduced in violation of Texas Rule of Civil Procedure 265. See Tex.R.Civ.P. 265. However, appellant objected to the trial court's explanation to the jury only on the grounds of irrelevance and undue prejudice. Appellant did not object to the manner in which the court explained the nature of the conviction to the venire panel nor did he request the court to instruct the panel to disregard the explanation. Therefore, no error is preserved for appeal. Regardless, we have determined that Rule 265, which requires that parties to a case introduce evidence, only specifies the order of trial. The rule does not apply to the conduct or scope of voir dire, which lies properly in the sound discretion of the trial court. Babcock v. Northwest Memorial Hosp., 767 S.W.2d 705, 709 (Tex.1989); see also Dallas Ry. & Terminal Co. v. Flowers, 284 S.W.2d 160, 163 (Tex.Civ.App.Waco 1955, writ ref'd n.r.e.) ("The matter of voir dire examination ... is one in which wide latitude is accorded. The extent of such examination is largely within the discretion of the Trial Court."); Fort Worth & D.C. Ry. Co. v. Kiel, 195 S.W.2d 405, 410 (Tex.Civ. App.Fort Worth 1946, writ ref'd n.r.e.).
Appellant also asserts that the substance of the court's announcement was unduly prejudicial to appellant. We disagree. The trial court's decision will be reversed on appeal only in the clear case of abuse of discretion. Johnson v. Reed, 464 S.W.2d 689, 691 (Tex.Civ.App.Dallas 1971, writ ref'd n.r.e.), cert. denied, 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256 (1972); Kiel, 195 S.W.2d at 410. The entire voir dire examination is before us in the record. We have carefully examined it and conclude that the trial court did not abuse its discretion when it reversed its ruling on the motion in limine and allowed the Department to interrogate the prospective jurors concerning their reaction to the nature of appellant's conviction. The trial court explained its rationale:
What I basically decided is I'm not going to give any instruction. I think any instruction I might give could be reversible error at this stage. I'm going to let the attorneys voir dire on it. I am going to allow in what the offense is. It will come in during the trial, so you need to voir dire on it.
* * * * * *
I'm going to have to hear a lot of this out of the presence of the jury, if we get a jury. But the fact that this gentleman might have a temporary problem which resulted in the beating death of a child the problem I'm having, Mr. Calabrese [appellant's counsel], is if you don't allow to voir dire on it and it does come in, you're the one who gets slammed dunk with it.
The court therefore allowed the interrogation of the venire panel to give appellant's counsel the opportunity to determine whether knowledge of the nature of appellant's conviction would unduly bias any prospective juror and accordingly enabled appellant's counsel to use his peremptory challenges and challenges for cause to eliminate prospective jurors.
The purpose of permitting counsel to interrogate prospective jurors on voir dire examination is to elicit facts that will enable the attorney to exercise the right of peremptory challenge in an intelligent manner.... However, such a right to interrogate is not unlimited but must, of necessity, be limited to those inquiries which are material and relevant to the particular kind of case being tried. Since our rules of civil procedure are silent concerning the details of the manner of conducting the voir dire examination it has *251 been held that the extent of same is largely within the trial court's discretion.
Johnson, 464 S.W.2d at 691 (citations omitted). In light of our determination that evidence relating to the Leon's death was material and relevant to the termination suit, we conclude that the trial court committed no abuse of discretion by informing the venire panel of the nature of appellant's criminal conviction. We therefore overrule appellant's first point of error.
B. Legal and Factual Sufficiency of the Evidence
In his third and fourth points of error, appellant attacks the legal and factual sufficiency of the evidence underlying the trial court's judgment. The termination of parental rights involves fundamental constitutional rights. See Stanley v. Illinois, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212-13, 31 L.Ed.2d 551 (1972). Therefore, evidence supporting the finding that parental rights should be terminated must be clear and convincing. In re G.M., 596 S.W.2d 846, 847 (Tex.1980). "The clear and convincing standard of proof is intentionally placed on the party seeking the termination of the parental rights, so as to create a higher burden to fulfill, because of the severity and permanence of the termination of the parent-child relationship." Harris, 838 S.W.2d at 941. This standard requires more proof than the preponderance of the evidence standard applied in civil cases but less proof than the reasonable doubt standard applied in criminal cases. In re G.M., 596 S.W.2d at 847. The clear and convincing standard requires the degree of proof that will produce in the mind of the fact-finder a firm belief or conviction as to the truth of the matters sought to be proved. Id.
When both no evidence and factual sufficiency challenges are raised on appeal, the court must first examine the legal sufficiency of the evidence. Glover v. Texas Gen. Indem. Co., 619 S.W.2d 400, 401 (Tex. 1981). In reviewing a challenge to the legal sufficiency of the evidence, the court is to consider only the evidence and inferences tending to support the jury's findings and disregard all evidence and inferences to the contrary. Stafford v. Stafford, 726 S.W.2d 14, 16 (Tex.1987). In reviewing the factual sufficiency of the evidence, the court must consider and weigh all the evidence and should set aside the judgment only if it is so contrary to the overwhelming weight of the evidence to be clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). The clear and convincing standard of proof does not alter the appropriate standard of appellate review. D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 353 (Tex. App.Austin 1993, no writ).
After reviewing the evidence relating to the trial court's finding on subsections (D) and (E) of section 15.02(a)(1), we conclude that the trial court's finding that appellant engaged in conduct that endangered his children is supported by legally and factually sufficient evidence. Appellant engaged in a voluntary, deliberate, and conscious course of conduct that endangered the physical and emotional well being of his children. See Harris, 838 S.W.2d at 942. The conduct need not be directed toward his children or cause them actual physical injury to constitute conduct that endangers their well being. The evidence of appellant's criminal conviction, imprisonment, violent temper, inability to hold a job, illegal drug use and drug dealing and the inferences drawn from this evidence support the trial court's termination of appellant's parental rights under both section 15.02(a)(1)(D) and (E). Therefore, the evidence is legally sufficient.
Appellant testified that he loves his children; that he never abused them or their mother; that police coerced him into confessing to the killing of Leon and that he could not in fact remember what happened because he was on drugs at the time; that he has not used drugs since he has been in prison; and that he has family members willing to care for his children. Several of appellant's family members also testified that appellant loves his children; that he never abused his children or his wife; and that he never used drugs around his children. However, after weighing this evidence against the testimony of appellant's wife, her mother, and her brother, along with the evidence of appellant's role in the death of Leon, we conclude *252 that the trial court's finding is not so contrary to the overwhelming weight of the evidence as to be manifestly wrong or unjust. Accordingly, the evidence is factually sufficient.
Likewise, after consideration of the factors set out in Holley and the evidence before the trial court, we find the evidence is legally and factually sufficient to support the trial court's finding that the best interest of the children will be served by terminating appellant's parental rights. Mary Robinson, the Department case worker, testified that the termination of appellant's parental rights was necessary in order for the children to be eligible for adoption. Both Robinson and Amanda Van Hoozer, the Department investigator, testified that termination of appellant's parental rights and permanent adoption were in the best interest of the children. Robinson reported that the Department proposed to find an adoptive home for the children and confirmed that the Department prefers to keep the children together or at least place the children with family members so that they can continue to see each other. Refugia Gomez, the children's great-aunt who has cared for Tony since January 1993, testified that she and her husband are interested in adopting him.
The evidence before the trial court is especially persuasive in light of the fact that appellant is serving a life sentence and will not be eligible for parole until he has served at least fifteen years of his sentence.[4] If appellant's parental rights were not terminated, the Department would have to serve as the children's permanent managing conservator for many years, keeping them in foster care and not free for adoption. The Holley test focuses on the best interest of the child, not the best interest of the parent. Accordingly, the trial court is not required to ignore the consequences of its failure to terminate parental rights. When the only available parent is not suitable as a primary caretaker, as the evidence showed appellant is not, the trial court could properly decide that the impermanent foster care arrangement that would be mandated if appellant retained any parental rights was not in the children's best interest. As this Court has explained:
It may well have been in [appellant's] best interest to continue to have limited access to his [children], but the evidence is legally and factually sufficient to support the trial court's decision that it was in [the children's] best interest to terminate [appellant's] parental rights in order to make possible [their] future adoption.
D.O., 851 S.W.2d at 358. Appellant's third point of error is overruled.
Based upon our determination that the trial court's finding that appellant's parental rights should be terminated was supported by factually sufficient evidence, we conclude that the court's failure to find that appellant should be named possessory conservator of the children was not contrary to the great weight and preponderance of the evidence. We overrule appellant's fourth point of error.

CONCLUSION
We conclude that the trial court did not err in admitting evidence and informing the venire panel of the nature of appellant's incarceration and facts underlying his conviction nor did it err in basing its judgment on legally and factually insufficient evidence. Thus, we affirm the trial-court judgment.
NOTES
[1] On September 1, 1992, all functions, programs, and activities related to the child protective services program, including adoption and foster care, were transferred from the Department of Human Services to the Department of Protective and Regulatory Services. Act of Aug. 9, 1991, 72d Leg., 1st C.S., ch. 15, art. 1, § 1.06(a), 1991 Tex.Gen.Laws 281, 295.
[2] This written confession was read to the jury during trial and was permitted to be taken into the jury room.
[3] Section 11.15(b) of the Family Code requires that findings authorizing the trial court to terminate a parent-child relationship "must be based on clear and convincing evidence." Tex.Fam. Code Ann. 11.15(b) (West 1986).
[4] Appellant was sentenced December 5, 1989, so he will not be eligible for parole until the year 2004. By that time, Michelle, Tony, and Josephine will be 14, 15, and 16, respectively.