**In the Interest of M.H., L.H., and A.H., Children.**

No. B14–87–353–CV.

Court of Appeals of Texas, Houston (14th Dist.).

Jan. 14, 1988.

Helen Stewart Truscott, Texas City, for appellant.

Michael J. Guarino, Jim Baggett, Galveston, for appellee.

Before PAUL PRESSLER, MURPHY and ELLIS, JJ.

## OPINION

ELLIS, Justice.

This is an appeal by D.H. from an involuntary termination of her parental rights. Appellant urges five points of error. She challenges the trial court's entering certain findings in alternative form, as well as the legal sufficiency of the evidence. She also alleges the court severed the parent-child relationship based solely on a determination of the children's best interest. We affirm.

Appellant is 27 years old and the natural mother of M.H., age nine; L.H., age four; and A.H., age three. M.H. is a severely handicapped child afflicted with cerebral palsy. The other two children are not handicapped, although each has a history of medical problems associated with neglect. Galveston County Children's Protective Services of [hereinafter "G.C.C.P.S."] has been involved with appellant since 1979, when M.H. was six months old. G.C.C.P.S. held temporary managing conservatorship of M.H. for six months between 1979 and 1980, and has held temporary managing conservatorship of all three children since late 1984. G.C.C.P.S. filed original and amended petitions to terminate appellant's relationship with the three children as well as their relationship with the men alleged to be their fathers. Both petitions sought involuntary termination pursuant to the grounds enumerated in Tex.Fam. Code § 15.02(1)(A–F) & (2) (Vernon 1986).[1]

The court terminated appellant's parental rights in each of the children after a bench trial. The court's order reflects supporting findings which track the grounds for involuntary termination of Tex.Fam.Code § 15.02(1)(D) & (E), as well as a finding that termination of appellant's right would be in the children's best interest, *see* § 15.02(2). The children's mother, D.H., appeals from that order.

In her first point of error appellant alleges the trial court erred by failing to positively state which alternative findings had occurred. Appellant complains of the following findings in the court's order:

1. All statutory references are to the 1986 edition of the Texas Family Code.

[Appellant e]ngaged in conduct *or* knowingly place the children with persons who engaged in conduct which endangers [sic] the physical or emotional well-being of the children;

Knowingly placed *or* knowingly allowed the children to remain in conditions or surroundings which endangers [sic] the physical or emotional well-being of the children; (emphasis added)

By relying on *In re S.H.,* 548 S.W.2d 804, 805 (Tex.Civ.App.—Tyler 1977, no writ), appellant apparently requests a remand of her cause for clearer findings so that she might know with certainty which facts the court found against her in order to present her appeal. We find no need for a remand. While the allegedly defective findings are alternatively phrased, they are supported by the following additional findings, which appellant overlooks in arguing her point of error:

Such conduct alleged is that on or about the months of June and July, 1984, D.H. failed to provide the adequate nutrients to her child, A.H., which resulted in a failure to thrive condition;

Additional conduct alleged is that on or about December, 1983, January and February, 1984, D.H. Failed to provide adequate supervision for her child, L.H. which resulted in the endangerment of his health. It is also alleged that D.H. failed to provide the proper follow-up medical advice which endangered the health of the child, L.H.

Further conduct alleged is that on or about June and July, 1984, D.H. failed to provide adequate therapy and follow through of medical advice that endangered M.H.'s health.

■ A parent whose rights are involuntarily terminated is entitled to sufficiently specific findings on which to base an appeal. *In re S.H.,* 548 S.W.2d at 806. The entirety of the court's order demonstrates that the trial court supported its alternatively phrased preliminary findings with additional determinations that specific instances of conduct had occurred. The trial court undoubtedly entered its alternatively phrased findings in order to comply with the express language of § 15.02(1) & (2) and *Richardson v. Green,* 677 S.W.2d 497, 499 (Tex.1984) As the supreme court indicated in *Richardson,* in order to terminate a parent's rights pursuant to § 15.02, a trial court must *first* determine that a parent has committed at least one of eleven acts enumerated in § 15.02(1)(A–K), and then determine that termination is the child's best interest pursuant to § 15.02(2). *Richardson,* 677 S.W.2d at 499. The allegedly defective findings in the instant case merely track subsections (E) and (D) of § 15.02(1), respectively. We conclude that the court phrased its preliminary findings in the alternative language of § 15.02(1)(D) & (E) in order to comply with the express language of the statute and the *Richardson* case.

■ Because the trial court entered the additional findings of specific acts of conduct indicated above, we distinguish appellate decisions which have resulted in a remand for additional findings. In both *Juan A. v. Dallas County Child Welfare,* 733 S.W.2d 559 (Tex.App.—Dallas 1986, no writ) and *W.H. v. Moore,* 589 S.W.2d 830 (Tex.Civ.App.—Dallas), *aff'd after remand,* 591 S.W.2d 645 (Tex.Civ.App.1979, no writ), the Dallas court of appeals ordered a remand for additional § 15.02(1) findings because the trial courts had entered only alternatively phrased findings similar to those appellant complains of here. In *In re S.H.,* 548 S.W.2d at 806, on which she relies, and *Matthews v. Simmons,* 589 S.W.2d 156, 159–60 (Tex.Civ.App.—Tyler 1979, no writ), the Tyler court of appeals also instructed the trial courts to enter more specific findings, but only after remanding the cases on other grounds. We conclude the remand the courts of appeal found necessary in *In re S.H., Matthews v. Simmons, Juan A. v. Dallas County Child Welfare,* and *W.H. v. Moore* is not required here. In view of the very precise findings of specific acts of misconduct, we find appellant sufficiently apprised of the court's adverse findings, and overrule her first point of error.

Before responding to appellant's remaining points of error, we note the clear and

convincing standard of proof which governs involuntary termination cases. Tex. Fam.Code § 11.15(b). To satisfy that standard, the proof presented in support of terminating D.H.'s parental rights must have produced a firm belief or conviction in the mind of the trier of fact, here the trial court, that the G.C.C.P.S.'s assertions were true. *See* Tex.Fam.Code § 11.15(c); *Clark v. Dearen,* 715 S.W.2d 364, 365 (Tex.App.—Houston [1st Dist.] 1986, no writ).

In her second, third, and fourth points of error, appellant alleges there is no evidence to support the trial court's findings which track § 15.02(1)(E), (D), & (2) respectively. "No evidence" points of error raise questions of law; they address the legal sufficiency of the evidence to support a trial court's findings. *See Glover v. Texas General Indemnity Co.,* 619 S.W.2d 400, 401 (Tex.1981) (per curiam). We review legal sufficiency points of error by considering only the evidence and inferences which tend to support the challenged finding; we must disregard all contrary evidence and inferences. *King v. Bauer,* 688 S.W.2d 845, 846 (Tex.1985) (opinion on rehearing); *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex. 1965). Therefore, if any evidence in the record supports a finding which appellant challenges, we must uphold the finding and overrule her point of error. This standard of review is proper when a party's appeal raises "no evidence" points of error in an involuntary termination case. *See Richardson v. Green,* 677 S.W.2d at 501; *In re S.H.A.,* 728 S.W.2d 73, 86, (Tex.App.—Dallas 1987, no writ) (en banc).

■ Appellant's second point of error challenges the legal sufficiency of the evidence supporting the trial court's findings pursuant to § 15.02(1)(E) of the Family Code. She contends no evidence shows she engaged in conduct which endangered her children's physical or emotional well-being, or placed her children with persons who did so. We disagree.

Appellant incorrectly maintains that because G.C.C.P.S. failed to establish aggressive behavior or conduct on her part, it therefore failed to establish that she abused her children emotionally or physi-

cally. Appellant relies on *Higgins v. Dallas County Child Welfare Unit,* 544 S.W. 2d 745 (Tex.Civ.App.—Dallas 1976, no writ). In *In re S.H.A.,* 728 S.W.2d at 85, the Dallas court of appeals specifically overruled the position it took in *Higgins* and unequivocally stated that a showing of physical abuse directed toward the child is not required pursuant to § 15.02(1)(E). In *S.H.A.* the court adopted several Texas appellate courts' approach to § 15.02(1)(E). *See In re S.H.A.,* 728 S.W.2d at 85, citing *Allred v. Harris County Child Welfare Unit,* 615 S.W.2d 803, 806 (Tex.Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.) and several similar cases.

The Texas Supreme Court decided *Texas Department of Human Services v. Boyd,* 727 S.W.2d 531 (Tex.1987) soon after the Dallas court decided *S.H.A.* The *Boyd* decision focused on the term "endanger" used in § 15.02(1)(E) and expressly disapproved of the construction of that term taken by the Austin court of appeals. According to the supreme court, "endanger" means to expose to loss or injury or to jeopardize a child's emotional or physical health. *Boyd,* 727 S.W.2d at 533. In *Boyd,* the supreme court reiterated the rule that evidence of a mere threat of emotional or physical injury, or the adverse effects of an imperfect home situation will not suffice to terminate the parent-child relationship pursuant to § 15.02(1)(E). 727 S.W.2d at 533. The supreme court then clarified the degree of proof required pursuant to § 15.02(1)(E) by reiterating two propositions from the *Allred* case: the parent's conduct need not be directed at the child; nor is it necessary to show actual injury to the child. *Boyd,* 727 S.W.2d at 533. In addition, the *Boyd* opinion recognized not only that evidence of a continuing course of conduct could support termination pursuant to § 15.02(1)(E), but also overruled the lower court's holding that danger could not be inferred from a parent's misconduct. *Boyd,* 727 S.W.2d at 534, 533.

*Boyd* and *In re S.H.A.* clearly demonstrate that in order to sustain an involuntary termination pursuant to § 15.02(1)(E),

evidence offered by the party seeking termination need not rise to the level of either actual aggressive conduct resulting in emotional or physical injury or actual and concrete threat of emotional or physical injury. Appellant's complaint that the record fails to establish actual aggressive conduct on her part is therefore without merit.

■ We have reviewed the record in response to appellant's contention that there is no evidence to support the trial court's § 15.02(1)(E) determinations. We conclude that ample evidence supports the conclusion that appellant's own conduct endangered her children by jeopardizing their physical and emotional health and exposing them to significant health risks, or that the conduct of those with whom she left them did so. *Boyd,* 727 S.W.2d at 533; *In re S.H.A.,* 728 S.W.2d at 85. Appellant herself acknowledged her history of leaving her children unsupervised. That conduct began in 1979, when M.H.'s failure to thrive resulted in his hospitalization. At trial, two G.C.C.P.S. caseworkers referred to an informal parent-agency agreement relating to the children's care which appellant had with G.C.C.P.S. She admitted that her promise not to leave the children alone was one feature of the agreement. Yet the record shows she repeatedly left the children alone for long periods of time, left them with other minor children, or left them with inadequate adult care. The most recent record instance of appellant's leaving the children alone occurred shortly before G.C.C.P.S. gained temporary managing conservatorship of the children in late 1984. That incident took place when M.H. was five years old, L.H. not yet one, and A.H. a newborn, yet the record reveals several instances which occurred when the two older children were younger.

The court found that appellant's failure to provide adequate supervision resulted in injury to her son L.H. At age eight months he bit into an electrical cord and burned the flesh from his lips. The record supports the inference that the roommate whom appellant said was watching him did not provide adequate supervision.

In addition to leaving the children alone or with inadequate supervision, the record clearly demonstrates that appellant's own conduct endangered their health and well-being. Although appellant realized the severity of M.H.'s handicaps, and recognized the need to exercise his limbs to prevent contractures, the record shows that his muscular contractures grew so much worse due to her failure to exercise his limbs that his physicians told her surgical correction might be necessary. Further, although the school bus came repeatedly to her door to transport M.H. to the school program that would have provided therapy for him, appellant consistently failed to send him to school. M.H. weighed only twenty-two pounds, the size of a normal one year old, at age five. Appellant failed to require L.H. to wear a specially fitted face mask that would have prevented the surgery later performed to separate his lips which had fused together. Although the record shows that her daughter A.H.'s diarrhea began when she was only a week old, appellant failed to keep a doctor's appointment arranged by the caseworker who noticed the infant's condition. When A.H.'s condition ultimately resulted in hospitalization at age one month, her diarrhea cleared up after one day and she regained her seventy-fifth percentile birth weight after deteriorating to the fifth percentile weight noted on her admission to the hospital. Both physicians who treated A.H. testified that she suffered not only from diarrhea, but also from a failure to thrive associated with neglect.

The record demonstrates that appellant consistently missed follow-up sessions for both A.H. and L.H., as well as M.H.'s therapy and her own counselling sessions. Several witnesses testified to appellant's severe lack of emotional stability, which Texas courts have recognized as a factor contributing to endangerment sufficient to terminate parental rights. *See, e.g., Davis v. Travis County Child Welfare Unit,* 564 S.W.2d 415 (Tex.Civ.App.—Austin 1978, no writ). Appellant's imprisonment in 1983 for a parole violation is another contributing factor supporting termination in this case. *Boyd,* 727 S.W.2d at 533.

We find that the record clearly supports the trial court's finding that appellant engaged in a course of conduct which endangered her children's physical or emotional well-being or placed them with others who did so, and therefore overrule the second point of error.

■ In her third point of error appellant maintains there is no evidence to support the trial court's finding, pursuant to § 15.02(1)(D) of the Family Code, that she knowingly placed her children in conditions or surroundings that endangered their physical or emotional health. We cannot agree.

Unlike § 15.02(1)(E), which addresses parental conduct, § 15.02(1)(D) addresses the child's surroundings and environment. *In re S.H.A.*, 728 S.W.2d at 84; *Stuart v. Tarrant County Child Welfare Unit,* 677 S.W.2d 273, 280 (Tex.App.—Fort Worth 1984, writ ref'd n.r.e.). However, both subsections concern circumstances which "endanger" well-being. Therefore, although only § 15.02(1)(E) was at issue in the Texas Supreme Court's *Boyd* decision, we conclude its construction of the term "endanger" also applies to termination pursuant to § 15.02(1)(D). We must therefore overrule appellant's third "no evidence" point if any evidence supports a finding that the children's environment jeopardized their physical or emotional health by exposing them to risk of physical or emotional injury. *See Boyd,* 727 S.W.2d at 533.

We find the record legally sufficient to support the trial court's finding that appellant knowingly placed, or allowed her children to remain in, an endangering environment. Specific instances include a caseworker's testifying that she found M.H. and L.H. alone in a room in which an unprotected wall-mounted heater was shooting out flames. M.H. was five at the time and L.H. not yet one. The same caseworker testified that Homemaker Services workers assigned to appellant's home often reported her missing. Once when appellant left her handicapped son M.H. alone in a house which she acknowledged was overrun by ants, he experienced anaphylactic shock due to his extensive ant bites and required emergency resuscitation.

Although there is less direct evidence concerning the effect of the children's environment on the infant A.H., we find sufficient evidence to show that the environment appellant provided for her children had adverse effects on A.H. G.C.C.P.S. succeeded in gaining temporary managing conservatorship of A.H. when she was about six months old. The record demonstrates that the physicians who treated her for diarrhea and failure to thrive were concerned about her environment. Moreover, there was testimony that appellant consistently failed to keep the Homemaker Services appointments which were designed to help her improve the children's environment as well as her own parenting skills. There was evidence that the children and their living quarters were often filthy, as well as evidence that she failed to make improvements in the environment which caseworkers recommended. Ultimately, during the fall of 1984, when all three children were with appellant, she refused to admit G.C.C.P.S. caseworkers who sought to monitor the home situation. Finally, because testimony at trial shows that appellant failed to improve the parenting skills, which had resulted in such an unsafe environment for M.H. and L.H., we conclude the trial court properly inferred that the environment was equally risky for A.H. during the first six months of her life. *Boyd,* 727 S.W.2d at 533.

Because we find the evidence legally sufficient to support termination of appellant's parental rights in all three children pursuant to § 15.02(1)(D) of the Family Code due to an environment which endangered their physical and emotional well-being, we overrule appellant's third point of error.

■ We next address appellant's fourth and fifth points of error in which she challenges the trial court's finding that termination of her parental rights served the children's best interest. The fourth point challenges the legal sufficiency of evidence to support the court's best interest finding. In her fifth point she maintains the court erroneously severed her parental rights by evaluating only the children's best interest.

We disagree with both contentions. Section 15.02(2) of the Family Code requires a trial court to buttress § 15.02(1) findings of acts or omissions with an additional finding that termination of parental rights is in the children's best interest. *See also, Holley v. Adams*, 544 S.W.2d 367, 371 (Tex.1976) (both elements required). We find ample evidence in the record supports the trial court's concluding that termination of appellant's parental rights was in the best interest of all three children.

▮ With respect to M.H., her handicapped child, appellant's own testimony established he would do better to continue in the care of G.C.C.P.S. Furthermore, in briefing her fourth point of error to this court, appellant concedes there was testimony tending to show her "acts and omissions" which endangered the emotional or physical well-being of all three children. A parent's acts or omissions which show lack of a proper parent-child relationship are one of many possible factors Texas courts recognize as affecting the best interest of the child. *See Holley*, 544 S.W.2d at 372. We find the court's finding that termination of appellant's parental rights would serve the children's best interest well supported in the record and overrule the fourth point of error.

Appellant bases her fifth point of error on remarks concerning the children's best interest which the trial court made when it announced its decision to terminate her parental rights at the close of trial. She argues her parental rights were severed based *only* on a finding of the children's best interest in violation of Tex.Fam.Code § 15.02(2) and *Holley*, 544 S.W.2d at 371. In view of our determination that sufficient evidence supports the trial court's findings concerning appellant's acts and omissions pursuant to § 15.02(1)(D) & (E), as well as § 15.02(2), her contention is without merit. The fifth point of error is overruled.

The judgment of the trial court is affirmed.