GONZALES 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00379-CV







Mona Bornhoeft Gonzales, Appellant



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT


NO. 10,281, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING







 Appellee Texas Department of Protective and Regulatory Services (the
"Department") filed suit to terminate the parental rights of appellant Mona Bornhoeft Gonzales. 
After a bench trial, the trial court granted the Department's petition. Gonzales appeals. We will
reverse the trial court's judgment and render judgment that Gonzales's parental rights should not
be terminated.



BACKGROUND


 On February 14, 1991, the Department received a referral alleging that S.B.,
Gonzales's twenty-one month old son, was wandering unattended outside the Windsor Square
Apartments in Giddings, where Gonzales resided. A female tenant brought him to the complex's
office, and then went in search of Gonzales. Gonzales came to the office immediately after she
was notified of S.B.'s location. The child was dressed only in a wet diaper; however, February
14 was a warm, sunny day, and he did not appear harmed. Stacy Furman, a Department
caseworker who investigated this incident of neglectful supervision, concluded that the child
should be removed from the home. Gonzales was permitted supervised visits with the child. 
Gonzales, who suffers from schizo-affective disorder, refused to take her prescribed medications
despite the Department's repeated requests that she comply with her medication regimen. 

 In 1993, the Department filed suit requesting termination of Gonzales's parental
rights. The Department also sought termination of the parental rights of S.B.'s alleged father,
Fidel Gonzales. (1) During the bench trial, the trial court declared Fidel to be S.B.'s biological
father. The trial court then granted Fidel Gonzales's motion for directed verdict based on the
insufficiency of evidence to support his parental termination. The trial court, however, terminated
Mona Gonzales's parental rights. 

 By four points of error, Gonzales appeals, challenging the trial court's failure to
file findings of fact and conclusions of law, the legal and factual sufficiency of the evidence, and
the trial court's denial of her constitutional rights.



DISCUSSION


 In her first point of error, Gonzales contends that the trial court erred in failing to
comply with her request for findings of fact and conclusions of law. A trial court is required to
file findings of fact and conclusions of law when a request is timely made. Tex. R. Civ. P. 297. 
The party seeking the findings and conclusions, however, must file its request within twenty days
after the trial court signs the final judgment. Tex. R. Civ. P. 296. The trial court signed the final
judgment on March 23, 1994, but Gonzales did not file her request until May 23, 1994. Because
the request was filed more than twenty days after the final judgment was rendered, the trial court
had no duty to prepare findings of fact and conclusions of law. See DeMello v. NBC Bank--Perrin
Beitel, 762 S.W.2d 379, 381 (Tex. App.--San Antonio 1988, no writ).

 Gonzales apparently believes that her motion for new trial, which the trial court
denied on May 23, extended the time in which to file her request. We disagree. Although Rule
296 formerly allowed the request to be made after either the final judgment or the motion for new
trial, the rule was subsequently amended to mandate that the request be filed within twenty days
of the signing of the final judgment. See Lute Riley Motors, Inc. v. T.C. Crist, Inc., 767 S.W.2d
439, 440 (Tex. App.--Dallas 1988, writ denied); see also West Tex. Peterbilt, Inc. v. Paso Del
Norte Oil Co., 768 S.W.2d 380, 382 (Tex. App.--El Paso 1989, writ denied). Gonzales's first
point of error is overruled.

 In her second point of error, Gonzales challenges the legal and factual sufficiency
of the evidence to support the trial court's conclusion that her parental rights should be
terminated. In deciding a no-evidence point, we must consider only the evidence and inferences
tending to support the finding of the trier of fact and disregard all evidence and inferences to the
contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied, 498
U.S. 847 (1990). When reviewing a jury verdict to determine the factual sufficiency of the
evidence, we must consider and weigh all the evidence and should set aside the judgment only if
it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. 
Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986). When both legal and factual sufficiency points
are raised, we should rule on the "no evidence" point first. Glover v. Texas Gen. Indem. Co.,
619 S.W.2d 400, 401 (Tex. 1981). 

 The United States Supreme Court has recognized that the right to raise one's
children involves fundamental constitutional rights. Stanley v. Illinois, 405 U.S. 645, 651 (1972);
see also In re G.M., 596 S.W.2d 846, 846 (Tex. 1980). When a state seeks to terminate parental
rights, which involves an infringement of fundamental liberty interests, the state must prove its
case by clear and convincing evidence. See Santosky v. Kramer, 455 U.S. 745, 769 (1982);
Holick v. Smith, 685 S.W.2d 18, 20 (Tex. 1985). The clear and convincing standard of proof,
however, does not alter the appropriate standard of appellate review. D.O. v. Texas Dep't of
Human Servs., 851 S.W.2d 351, 353 (Tex. App.--Austin 1993, no writ).

 The Department sought termination of Gonzales's parental rights under sections
15.024 and 15.02 of the Family Code. Tex. Fam. Code Ann. §§ 15.024(a), 15.02(a)(1)(E) (West
Supp. 1995). (2) Because the trial court relied upon both grounds in terminating Gonzales's parental
rights, we must examine each to determine whether either ground is supported by legally or
factually sufficient evidence.

 Termination is warranted under section 15.024 if:



[T]he parent has a mental or emotional illness or a mental deficiency that renders
the parent unable to provide for the physical, emotional, and mental needs of the
child, and the illness or deficiency, in all reasonable probability, proved by clear
and convincing evidence, renders the parent unable to provide for those needs from
the time of the court's finding until the 18th birthday of the child.



Id. § 15.024(a)(1). The Department argues that the evidence is legally and factually sufficient to
support the trial court's determination that Gonzales's rights should be terminated. The
Department introduced evidence at trial that before S.B. was removed from the home, the
Department had received four previous referrals concerning the child. (3) In the February 14, 1991
incident that occasioned S.B.'s removal, the child was observed running around the parking lot
of the apartment complex unsupervised. 

 The evidence indicated that Gonzales had been hospitalized eight times and had
attempted suicide on three separate occasions. Dr. Jeffrey Josephs, an Austin State Hospital
psychiatrist, testified that because of her illness, Gonzales has difficulty dealing with stress and
cannot distinguish between medications that alleviate her symptoms and illicit drugs. 

 Kathy Carney, a Department clerk who supervised one visit between Gonzales and
S.B., related the most damaging piece of evidence against Gonzales. Carney testified that during
the August 10, 1992 visit, Gonzales indicated that she wanted to take the child outside to listen
to the radio. When Carney opened the door, she observed that Gonzales was sitting under a tree
with S.B. in her lap, reading him a story. When Gonzales noticed Carney, she pulled out what
appeared to be a steak knife, placed it against her left wrist, and stated, "See this, when you place
it to your wrist it will make you bleed." Gonzales then began yelling at Carney that the agency
was at fault for making her behave this way, and questioned whether S.B. would ever be returned
to her. S.B. asked if his mother was sick, but when Gonzales attempted to hug him later in the
visit, he indicated that he did not want her to touch him. S.B.'s foster mother, Gail Post, testified
that he experienced some nightmares after this episode. (4) Gonzales also took the child to her
attorney's office during one visit because she wanted the attorney to see the effect of the
separation on S.B.; the caseworker, Stacy Furman, did not try to physically prevent Gonzales
from taking the child.

 Balanced against these obviously inappropriate actions is Furman's testimony that
during most of the visits at the Department office the interaction between S.B. and Gonzales was
positive; that all of the incidents in which Gonzales engaged in bizarre behaviors occurred after
S.B. was removed from her care; and that prior to the removal of the child, Furman had never
personally observed Gonzales engage in any activity that endangered the child. The foster mother
testified that when the child came to her home, there was no evidence of physical abuse, that he
was a very healthy child, and that he learned quite well.

 Dr. Josephs, who testified as the only expert for the Department, stated that he
believed Gonzales could adequately supervise and care for the child. He testified that, based upon
what he had heard from staff members at the mental health clinic, Gonzales had been a "warm,
loving, tender, caring mother who really took good care of him; and I believe that, based on what
my professional evaluation of her mental status is at the present, she would most likely be able
to care quite well for [S.B.] on a day-to-day basis." As to her refusal to take the prescribed
medication, he testified:



I think there would be a good chance that some of her symptoms could be brought
under better control on medication. But on the other hand, over the past couple
of years that I have been seeing her, it doesn't seem that she's been so terribly
incapacitated by her symptoms that, you know, she's been able to live fairly well
without medication, holding down a full-time job, living independently, taking care
of herself in her own apartment, shopping, cooking, cleaning. The times that Ms.
Shaver and I have been to her place her apartment has been spotless, immaculate. 
So it seems she's been able to . . . live independently fairly successfully without
medication, and so that's why I really haven't pushed for her to absolutely have to
take medication.



(Emphasis added.) 

 When confronted about the knife episode, Josephs indicated that he still believed
Gonzales could adequately care for the child, but stated that it would affect his opinion as to
whether it was in S.B.'s best interest to be returned to Gonzales. However, when he was
informed that Gonzales had not actually attempted to cut herself in front of the child and that the
situation was ultimately resolved without violence, Josephs indicated that this information favored
Gonzales's regaining custody.

 Examining the evidence presented at trial, we conclude that it is legally insufficient
to support the trial court's termination of Gonzales's rights under section 15.024. Tex. Fam.
Code Ann. § 15.024(a)(1) (West Supp. 1995). The Department has not proven by clear and
convincing evidence that Gonzales's schizo-affective disorder has rendered her incapable of
providing for S.B.'s physical, emotional, and mental needs. See Spurlock v. Texas Dep't of
Protective & Regulatory Servs., No. 3-93-268-CV, slip op. at 4-8 (Tex. App.--Austin June 7,
1995, no writ h.) (termination upheld under section 15.024 because parent was schizophrenic,
incapable of taking care of herself, lived in a group home, was emotionally abusive to her
children, and was unaware of their needs during her supervised visits). Indeed, all evidence
adduced at trial indicates that S.B. was bright, healthy, and well cared for at the time the
Department removed him. Furthermore, the Department's own expert witness opined that
Gonzales was capable of caring for the child even without her medication, although the medication
would be beneficial in improving her condition.

 We also can find no evidence in the record that supports the trial court's conclusion
that Gonzales's mental illness would, in all reasonable probability, render her incapable of
providing for the child's needs until his eighteenth birthday. See Tex. Fam. Code Ann. §
15.024(a)(1) (West Supp. 1995). The Department argues that Gonzales's refusal to take her
medication will probably persist until the child is grown and, thus, it has proven by clear and
convincing evidence that Gonzales will not be able to care for the child until he is eighteen. This
contention directly contradicts Dr. Josephs's testimony that Gonzales is capable of supervising and
caring for the child without being on medication. We hold that the trial court erred in finding that
clear and convincing evidence supported termination of Gonzales's parental rights under section
15.024. 

 The trial court also concluded that Gonzales's rights should be terminated under
section 15.02 because she "engaged in conduct or knowingly placed the child with persons who
engaged in conduct which endangers the physical or emotional well-being of the child." Id.
§ 15.02(a)(1)(E). As used in section 15.02, "endanger" requires more than a threat of
metaphysical injury or the possible ill effects of a less-than-ideal family environment. Texas Dep't
of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987). The Department need not prove,
however, that the parental misconduct was directed at the child or that the child actually suffered
injury. Id.; see Trevino v. Texas Dep't of Protective & Regulatory Servs., 893 S.W.2d 243, 251-52 (Tex. App.--Austin 1995, no writ) (father's murder of nephew considered in determining
whether termination proper under section 15.02(a)(1)(E), even in the absence of evidence that he
abused his own children); In re A.K.S., 736 S.W.2d 145, 146 (Tex. App.--Beaumont 1987, no
writ) (termination upheld because father's conviction for rape and proclivity for exposing genitals
to women constituted conduct that endangered the emotional well-being of child).

 A parent's mental illness, standing alone, is not sufficient to support termination
of the parent-child relationship under section 15.02(a)(1)(E). However, if the mental condition
causes the parent to engage in a course of conduct that endangers a child's physical or emotional
well-being, termination may be proper. See Carter v. Dallas County Child Welfare Unit, 532
S.W.2d 140, 141-42 (Tex. Civ. App.--Dallas 1975, no writ).

 The Department contends that termination under section 15.02(a)(1)(E) was
supported by evidence in the record, pointing to several instances that it asserts illustrate
Gonzales's psychological instability. Gonzales has been hospitalized eight times because of her
illness, and has attempted suicide three times, although no attempt resulted in serious injury to
herself. On one occasion, Gonzales threatened to cut her wrist in front of S.B. She has also taken
the child to see her attorney, which violated the rules for her supervised visits. Despite the
caseworker's admonition that Gonzales not discuss with S.B. what she perceived to be the
requirements for regaining custody of him, Gonzales told S.B. that the Department would not
return him unless she married his father and bought a car. The crucial evidence to the
Department, however, in asserting that Gonzales has engaged in conduct that endangers S.B. is
her persistent and ongoing refusal to take prescribed medications.

 After reviewing this evidence, we fail to see how it supports the "clear and
convincing" standard of proof required in termination cases. The mere fact that Gonzales has
been hospitalized on several occasions and has attempted suicide three times is inadequate to
terminate her rights based upon the circumstances of the instant cause. The Department presented
no evidence of when the hospitalizations (5) or the suicide attempts occurred. In the absence of
evidence of the time period for these events, we question their relevance. From what we can
glean from the record, it appears that these events occurred before S.B.'s birth because the record
contains no indication that Gonzales was not in constant possession of S.B. from his birth until
the Department removed him. (6) If this is true, then the incidents could not endanger the emotional
well-being of the child. Because of the absence of any time reference, we do not believe that
these incidents are relevant to whether Gonzales has engaged in a course of conduct that is
emotionally damaging to S.B.

 We also disagree with the Department that the two specified instances of Gonzales's
violation of the supervised visitation rules provide evidence that she engaged in conduct that
endangered S.B. Although this Court does not condone Gonzales's willful violations of
Department instructions, the Department has failed to show how taking the child to her attorney's
office or informing him of her belief as to why the Department refuses to relinquish custody
physically or emotionally endangered S.B.

 As for her consistent refusal to take her prescribed medication, Dr. Josephs
reiterated several times in his testimony that, although medication would be beneficial, it was not
necessary in order for Gonzales to be able to adequately care for S.B. Because the Department
failed to provide evidence that Gonzales's refusal to self-medicate endangered S.B., it does not
constitute evidence of a continuing course of conduct that endangers S.B.'s physical or emotional
well-being. Although we understand and sympathize with the Department's desire that Gonzales
take medication, the Department has not proven that the drugs are necessary in order for Gonzales
to adequately care for S.B. Cf. Boyd, 727 S.W.2d at 533 (evidence of a less-than-ideal family
environment insufficient to show endangerment).

 The knife-wielding incident in front of S.B. is undoubtedly troubling to this Court,
as it clearly was to the trial court. However, we believe that a single incident of parental
misconduct is insufficient to establish that a parent has engaged in a "course of conduct which has
the effect of endangering the physical or emotional well-being of the child." Id. at 534 (emphasis
added); see Tex. Fam. Code Ann. § 15.02(a)(1)(E) (West Supp. 1995). Gonzales's behavior was
clearly improper. We believe, however, that Gonzales's behavior must be analyzed in the context
of the stressful situation she had been placed in as a result of the removal of the child. The
Department removed S.B. and refused to return him unless she took medication that she objected
to on both moral grounds and because of its ill side effects; the Department refused to compromise
on this issue despite the fact that she had adequately cared for S.B. without medication. Gonzales
did not threaten the child, the clerk, or anyone except herself. Although a parent's threat of self-mutilation certainly can be emotionally damaging to a child, Gonzales's actions are mitigated by
the context in which the incident occurred. Indeed, Dr. Josephs testified that Gonzales's bizarre
behavior was attributable to the stress caused by the Department's removal of S.B. and the
necessity of dealing with the Department in order to see him. He testified that caring for S.B.
provided a great deal of comfort to Gonzales, despite the stress associated with rearing a child.

 Although the Department does not rely explicitly on the five instances of negligent
supervision to support termination, we note that a parent's failure to adequately supervise a child,
in combination with other factors, has been held sufficient to support termination. In re M.H.,
L.H., & A.H., 745 S.W.2d 424, 428 (Tex. App.--Houston [14th Dist.] 1988, no writ). In M.H.,
the court noted that the mother acknowledged that she had a history of leaving her children
unattended, had entered into an informal parent-agency agreement in which she promised not to
leave the children unsupervised, and then subsequently left them alone for long periods of time,
left them with other minor children, and left them with inadequate adult care. Id.

 In contrast, the two instances detailed in the record indicate that S.B. managed to
escape from the home while Gonzales was home, but had turned her attention to something else. 
In neither instance did the Department present evidence that Gonzales intentionally left the child
unsupervised or that she did not respond immediately when notified that the child had been found.

 Obviously, Gonzales's deficiencies could be significantly improved with less
onerous intervention than termination of her parental rights. The caseworker admitted that
although parenting classes and home visits from Mental Health Outreach were available as
alternatives to removal of the child, the Department did not pursue these or any other alternatives. 
When questioned concerning what steps could have been taken to return the child to the home,
the caseworker replied, "If Ms. Bornhoeft would take her medication." It is clear from the record
that the Department steadfastly refused to compromise on Gonzales's nonuse of medication, and
thus failed to pursue other alternatives that could have resolved this matter with less drastic
results.

 The Department must also prove by clear and convincing evidence that termination
is in the best interest of the child. See Tex. Fam. Code Ann. §§ 15.024(a)(3), 15.02(a)(2) (West
Supp. 1995). Termination of the parent-child relationship may not be based solely on a
determination that it would be in the best interest of the child, but it is certainly a consideration
of prime importance. Holley v. Adams, 544 S.W.2d 367, 370 (Tex. 1976). The supreme court
in Holley outlined a variety of factors that a trial court may consider in assessing whether
termination is in a child's best interest. Id. at 371-72. (7)

 Examining this case under the Holley factors, we conclude that the Department
failed to prove by clear and convincing evidence that termination is in the best interest of S.B. 
All evidence in the record indicates that S.B. was a healthy, well-cared for child, that he and
Gonzales had a positive relationship before removal, and that Gonzales was a loving mother who
provided a satisfactory home for S.B. The Department focuses on Gonzales's bizarre actions that
were not in S.B.'s best interest, but we believe that these actions are mitigated somewhat by the
stress Gonzales was under as a result of the removal of the child. Gonzales's refusal to use her
medications has not rendered her incapable of providing for S.B.; thus, we refuse to hold that this
unwillingness to medicate herself weighs heavily against her in assessing S.B.'s best interest.

 The caseworker testified that she believed that S.B.'s best interests would be served
by termination and adoption, and indicated that S.B. was adoptable. A trial court may consider
the adoptability of a child and the consequences of the failure to terminate on the child's chances
for a permanent, stable home life. See Trevino, 893 S.W.2d at 252; D.O., 851 S.W.2d at 358. 
In the instant cause, the trial court refused to terminate Fidel Gonzales's parental rights; ordered
that he have both supervised and unsupervised visits with the child, including overnight weekend
visitation; and ordered that a home study be conducted to assess whether Fidel Gonzales could
ultimately take custody of S.B. (8) In light of the fact that the father's rights were not terminated,
S.B. is not available for adoption even though the trial court terminated Gonzales's rights to the
child. Indeed, because Gonzales and Fidel Gonzales are now married, we are faced with the
potential anomalous situation of having Gonzales's parental rights terminated, yet allowing her
to rear and care for S.B. if his father eventually obtains custody of him. (9) The record lacks clear
and convincing evidence that termination is in S.B.'s best interest.

 Having reviewed all of the evidence adduced at trial, we conclude that the evidence
is legally insufficient to support the trial court's judgment that the Department proved by clear and
convincing evidence that either the section 15.024 or the section 15.02 ground for termination had
been satisfied. We sustain Gonzales's second point of error.



CONCLUSION


 The trial court erred in concluding that the Department proved by clear and
convincing evidence that Gonzales's parental rights should be terminated. Having sustained
Gonzales's second point of error, we find it unnecessary to address her third and fourth points of
error. We reverse the trial court's judgment and render judgment that Gonzales's parental rights
should not be terminated. 



 

 Mack Kidd, Justice

Before Justices Powers, Kidd and B. A. Smith

Reversed and Rendered

Filed: July 12, 1995

Do Not Publish


1.   When S.B. was removed from the home, Fidel and Mona Gonzales were not
married, nor had Fidel been adjudicated the father of S.B. Sometime before trial, they
married. Fidel subsequently signed a voluntary statement of paternity, which identified
him as S.B.'s legal father. 
2.   The Family Code recently has been recodified. See Act of Apr. 20, 1995, 74th Leg.,
R.S., ch. 20, § 1, 1995 Tex. Sess. Law Serv. 113 (West). However, the Act does not affect
any proceeding that was pending on the date of its enactment; these proceedings are governed
by the law at the time the proceeding was commenced. Id. § 3(a). We therefore cite to the
former Family Code in this opinion.
3.   At trial, the Department offered evidence about only one previous referral--during a
fight between Mona and Fidel Gonzales in the yard in front of Gonzales's apartment,
S.B. ran out of the apartment toward the street. Another apartment tenant noticed the
child and returned him to Gonzales. The Department did not offer testimony about the
other referrals, but documents in the record indicate that they also concerned negligent
supervision.
4.   The Department also elicited testimony from William Milchalk, the pastor of
Gonzales's church, who testified that on one occasion, Gonzales entered his office with a
butter knife, threatened to cut herself, and then slapped Milchalk when he attempted to
restrain her. He could not remember whether this incident occurred after S.B.'s
removal. He also testified that Gonzales threw rocks at the church in an attempt to break
the windows. S.B. was not with her during either incident. 
5.   The record indicates that Gonzales was hospitalized once after the child was removed
from the home.
6.   Dr. Josephs testified at trial that despite her illness, "she has been stable enough to
live an independent life and has cared for [S.B.] in what I've heard is a fairly satisfactory
way." 
7.   Factors to consider include: (1) desires of the child; (2) current and future
emotional and physical needs of the child; (3) emotional and physical danger to the child
now and in the future; (4) the parental abilities of individuals seeking custody; (5)
programs to assist these individuals; (6) the individuals' plans for the child; (7) stability of
the home; (8) acts or omissions of the parent; (9) any excuse for the acts and omissions of
the parent. Holley, 544 S.W.2d at 372. 
8.   The record provides no indication of whether any of these events have occurred
following the trial court's order.
9.   In fact, Fidel Gonzales may currently have possession of the child. In May 1994,
Fidel filed an application for writ of habeas corpus seeking possession of S.B. on the
ground that no order provided that the Department would retain possession of the child. 
Upon the trial court's denial of his application, Fidel filed a petition for writ of
mandamus with this Court to compel the trial court to vacate its order denying his habeas
petition. We conditionally granted the writ because section 14.10(f)(1) of the Family
Code provides that in the absence of a court order governing possession, a parent has the
right to possession of his child. Gonzalez[s] v. The Honorable Harold Towslee, Judge, No.
3-94-380-CV, slip op. at 4-5 (Tex. App.--Austin Nov. 23, 1994, no writ); see Tex. Fam. Code
Ann. § 14.10(f)(1) (West Supp. 1995). We are unaware of what has occurred in the case since
the time that we conditionally granted the writ of mandamus.