TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00222-CV






Lou Ann Krauss Baetz, Appellant




v.




Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF LEE COUNTY, 21ST JUDICIAL DISTRICT


NO. 9642, HONORABLE H. R. TOWSLEE, JUDGE PRESIDING 







 Following a non-jury trial, the trial court terminated the parent-child relationship
between appellant Lou Ann Krauss Baetz and three of her children, Amber Nicole Krauss,
Brandon Lee Edward Krauss, and Dustin Robert Krauss. The children's father, Douglas Krauss,
voluntarily relinquished his parental rights in the three children and the parent-child relationship
between them was likewise terminated. The court appointed appellee Texas Department of
Protective and Regulatory Services permanent managing conservator. On appeal, Lou Ann
challenges the evidentiary support for the decree of termination. We will affirm the decree.

 Before it could terminate Lou Ann's parental rights, the trial court was required to
find both that Lou Ann committed one of the acts specified in the Family Code and that
termination is in each child's best interest. Tex. Fam. Code Ann. § 161.001 (West Supp. 1998). (1) 
The trial court found that the Department proved that Lou Ann had (1) knowingly allowed the
children to remain in conditions or surroundings that endangered their physical and emotional
well-being, (2) engaged in conduct that endangered the children's physical and emotional well-being, and (3) knowingly placed the children with persons who engaged in conduct that
endangered their physical and emotional well-being. (2) See id. § 161.001(1)(D), (E). The court
found, in addition, that terminating the parent-child relationship between Lou Ann and the three
children was in the children's best interest.

 By twelve points of error, Lou Ann contests, as to each child, the legal and factual
sufficiency of the evidence supporting the first three findings listed above; Lou Ann does not
challenge the finding of best interest. The Department bore the burden to establish each finding
by clear and convincing evidence, meaning that degree of proof which produces in the mind of the
trier of fact a firm belief or conviction as to the truth of the finding. Richardson v. Green, 677
S.W.2d 497, 499 (Tex. 1984). To review the legal sufficiency of the evidence, we consider only
the evidence and inferences that support the finding, disregarding all evidence and inferences to
the contrary. Id. at 501; D.O. v. Texas Dep't of Human Servs., 851 S.W.2d 351, 353 (Tex.
App.--Austin 1993, no writ). If reasonable minds cannot differ from the conclusion that the
evidence lacks probative force, it will be held to be the legal equivalent of no evidence. 
Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). To review the factual
sufficiency of the evidence, we consider and weigh all the evidence and will set aside the finding
only if the evidence supporting it is so weak or the evidence to the contrary so overwhelming as
to make it clearly wrong and unjust. In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951);
D.O., 851 S.W.2d at 353.

 Because the evidence relating to the three children is intertwined, we will
summarize it as to all three. Amber Krauss was born on September 2, 1982, Brandon on May 5,
1984, and Dustin December 15, 1986. The record does not show when Doug and Lou Ann
married; once married, however, they separated and reunited a number of times before finally
separating around 1990. They were divorced on March 3, 1994. The Department temporarily
removed the children from the home several times before removing them a final time on May 13,
1991. The penultimate removal occurred June 30, 1990, when a doctor notified the Department
that he was hospitalizing Lou Ann and that the three children had no one to care for them. The
children were returned to Lou Ann nine days later, after which she was required to attend
counseling for drug and alcohol abuse and suicide threats. On May 13, 1991, Lou Ann was
arrested and jailed for failing to appear on a DWI charge in Houston. The children, who again
had no one to care for them, were transferred to the Department's care. In reviewing the
sufficiency of the evidence, we consider the events that occurred before the children's final
removal in May 1991. Ybarra v. Texas Dep't of Human Servs., 869 S.W.2d 574, 577 (Tex.
App.--Corpus Christi 1993, no writ).

 Amber testified that one of the problems in living with her mother was that she used
drugs and was not always able to watch the children. Doug stated that he and Lou Ann used drugs
heavily from the time they married until they finally separated. Lou Ann qualified Doug's
statement as being true "off and on," saying that their drug use depended where the children were
and that it was sometimes restricted to weekends. When the Department intervened in 1990, Lou
Ann had been seeing a counselor for drug and alcohol abuse. According to Doug, he and Lou
Ann used marijuana, methamphetamine, cocaine, heroin, and pharmaceutical drugs; Lou Ann
admitted to using methamphetamine and heroin. She denied using or selling drugs in 1991 when
the children were finally removed from her.

 Amber testified that she saw heroin, cocaine, and other drugs lying around the
house. Although Lou Ann denied using drugs in front of the children, Amber testified that she
saw her mother in the bedroom once or twice injecting heroin.

 Doug's mother, Virginia Krauss, suspected that both parents used drugs because
Lou Ann made frequent trips to Austin where she stayed in a motel. Lou Ann stated that in 1988
she was charged with selling amphetamines in Lee County. She also stated that from about 1987
to 1989, she worked as a cooperating individual for a drug task force. The sheriff of Lee County,
Joe Goodson, testified that the task force thought Lou Ann could set up purchases because she
associated with known drug dealers. The task force in fact convicted some of the people with Lou
Ann's help. Goodson stated that after Lou Ann left Lee County, she helped other law enforcement
agencies in Johnson City. As late as 1991, Lou Ann still had ties to the task force through help
she was giving the FBI in Fort Worth. Lou Ann denied bringing drug dealers to her house,
though she conceded that Art Zanders would come over. Zanders, with a thirty-year criminal
history, was considered by Goodson to be "the premiere speed cook in the southwest."

 Goodson testified that people who sell drugs are often dangerous. A parent
cooperating with a law enforcement agency could place the children in danger if when buying
drugs he or she left them with someone other than a parent or without supervision. Informants
additionally risk retaliation from people they have helped convict. More times than not, Goodson
stated, those convicted come back to find the informant after they are released; such an event could
endanger children at the house with the informant. For this reason, cooperating individuals do not
usually stay in the community where they have drug connections. Lou Ann testified that the drug
task force relocated her often.

 Amber testified that her mother was frequently gone during the day, leaving her
boyfriends to watch the children. Amber had indicated to a Department caseworker that the
boyfriends used drugs while at her mother's house. Brandon testified that his mother always went
to work and hired a babysitter; he also remembered that his mother would leave for one or two
days at a time without having anybody stay with the three children. Amber stated that the
boyfriends mistreated her and her brothers, including sexually. The Department's records
contained Brandon's disclosure that one of the boyfriends had sexually abused him; no disclosure
of sexual abuse was made by Dustin.

 Amber testified that when her mother was absent five or six of the boyfriends
sexually assaulted her; she remembered that one of the boyfriends was named Jimmy. The
Department's caseworker stated that the sexual abuse of Amber involved numerous incidents
before 1991, with some of the abuse occurring while Lou Ann was home but unable to watch the
children because of her drug use. Amber was afraid to tell her mother about the boyfriends'
sexual assaults. Lou Ann denied leaving Amber with the boyfriends and stated her belief that
Amber was molested by Doug. Amber did not recall whether the sexual abuse occurred when Lou
Ann and Doug were separated.

 When Amber was very young, Lou Ann and Doug took her to the doctor to
examine her for venereal warts. Because she had many problems, Amber had been seeing a
counselor long before this; Lou Ann hoped to learn through the counseling who was responsible
for the sexual abuse. In mid-1990, Lou Ann took Amber to the emergency room to see if she had
been penetrated; the examination, Lou Ann said, showed that she had not. The Department's case
file reflected that Lou Ann reported to a caseworker her suspicion that a boyfriend was sexually
abusing Amber; Lou Ann apparently made this report when the Department removed the children
in 1991. Lou Ann testified that if she had known someone was hurting her children, she would
have made sure it stopped.

 Amber also testified that the boyfriends at the house hit her and her brothers. Lou
Ann stated that the only time she knowingly placed the children in surroundings that endangered
them was when she left them with Doug. The children were in danger with Doug because of his
heroin use and his negative behavior when the heroin would wear off. She also testified that Doug
would pick the children up and throw them across the room, breaking the door. Lou Ann
additionally said that Doug beat her and made the children watch. Doug denied that he ever hit
Lou Ann or the children.

 Brandon testified that Lou Ann once caught him and Dustin drawing on each other
with a boyfriend's tattoo kit. Lou Ann made Brandon stand in the corner, but forgot about him
until he woke up eleven hours later and asked her permission to go to bed.

 At some point before the children were removed from Lou Ann in 1991, she was
arrested and jailed in Houston for driving while intoxicated. Virginia Krauss testified that she was
asked to come get the children in Houston. The children were living in a mobile home in a
"trashy" area of the city. The mobile home, which Doug called "ragged and looking like a drug
house," had no outside doors on it. Virginia considered the adults in the house to be strange. She
did not venture inside the mobile home, but took the children back with her and her husband to
Giddings. Lou Ann stated that she stayed in jail ten days on this occasion, but disagreed that
Virginia came to Houston, saying that two other people brought the children to Lee County.

 By points of error eleven and twelve, Lou Ann contests the legal and factual
sufficiency of the evidence to support the finding that she knowingly placed Amber with persons
who engaged in conduct that endangered her physical well-being. The evidence favorable to the
court's finding shows that Lou Ann frequently left Amber in the charge of her boyfriends, that the
boyfriends used drugs while watching Amber, that they hit her and five or six of them sexually
assaulted her, and that as a young child Amber contracted a sexually transmitted disease. Lou Ann
sought treatment for this disease and reported to the Department's caseworker her suspicion that
a boyfriend was sexually abusing Amber.

 Even if we accept Lou Ann's allegation that Amber had been sexually abused by
Doug rather than the boyfriends, nothing in the record shows that Lou Ann tried to protect Amber
from him. Lou Ann essentially took no action to protect Amber from a known danger. Further,
Lou Ann testified that she knowingly placed the children in danger when she left them with Doug
and that Doug threw the children across the room hard enough to break the door. (3) We hold that
some evidence supports the finding that Lou Ann knowingly placed Amber with persons who
engaged in conduct that endangered her physical well-being. Contrary to the court's finding is
evidence that Lou Ann denied leaving Amber with the boyfriends, that she denied knowing that
anyone was hurting the children, and that Doug denied hitting the children. Considering the entire
record, however, we conclude that the evidence is not factually so weak, nor the evidence to the
contrary so overwhelming, that the finding is clearly wrong and unjust. We therefore overrule
points eleven and twelve.

 By points of error seven and eight, Lou Ann contests the legal and factual
sufficiency of the evidence to support the trial court's finding that she knowingly placed Brandon
with persons who engaged in conduct that endangered his physical well-being. The record
contains evidence that Lou Ann frequently left Brandon in the care of her boyfriends, who hit
Brandon and one of whom sexually abused him. Even if Lou Ann did not expressly know of this
mistreatment, a reasonably diligent inquiry of the facts she knew, including the sexual abuse of
Amber, would have disclosed it. See Woodward v. Ortiz, 237 S.W.2d 286, 289 (Tex. 1951)
(actual knowledge can be either express or implied). Again, Lou Ann testified that she knowingly
endangered the children by leaving them with Doug. This evidence is legally sufficient to support
the court's finding. Considering the evidence both for and against the finding, we also hold that
it provides factually sufficient support. We therefore overrule points seven and eight.

 By points of error three and four, Lou Ann challenges the legal and factual
sufficiency of the evidence to support the court's finding that Lou Ann knowingly placed Dustin
with persons who engaged in conduct that endangered his physical well-being. As we have
discussed, the evidence shows that Dustin was often left with Lou Ann's boyfriends, who used
drugs while at the house and who hit the children. Lou Ann accused Doug of throwing the
children across the room. Because conduct endangering one child places all children in the
household in jeopardy, the conduct required to support this finding need not be directed toward
Dustin. Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531, 533 (Tex. 1987); In re S.H.A.,
728 S.W.2d 73, 85 (Tex. App.--Dallas 1987, writ ref'd n.r.e.). Thus, the evidence we have
considered of conduct that endangered Amber and Brandon's physical well-being shows that
Dustin's physical well-being was endangered as well. We hold that legally and factually sufficient
evidence supports the finding that Lou Ann knowingly placed Dustin with persons who engaged
in conduct that endangered his physical well-being. We overrule points three and four.

 Having found that one ground necessary for termination as to each child is
supported by legally and factually sufficient evidence, we need not consider Lou Ann's remaining
points of error. We therefore affirm the trial court's decree of termination.



 

 John Powers, Justice

Before Chief Justice Aboussie, Justices Powers and B. A. Smith

Affirmed

Filed: December 10, 1998

Do Not Publish

1. The version of the Family Code in effect in 1991, when the original petition was filed,
governs this suit. See Act of May 24, 1989, 71st Leg., R.S., ch. 808, §§ 1, 2, 1989 Tex. Gen.
Laws 3673, 3763-74 (Tex. Fam. Code § 15.02, since amended). Because subsequent amendments
have not changed the provisions at issue, we refer to the current Code for convenience.
2. The findings supporting termination as recited in the decree are improperly phrased in the
alternative, e.g., "Lou Ann . . . has engaged in conduct or knowingly placed the Children . . .
with persons who engaged in conduct which endangered the physical or emotional well-being of
the Children." Juan A v. Dallas County Child Welfare, 733 S.W.2d 559, 560 (Tex.
App.--Dallas 1986, no writ); In re S H , 548 S.W.2d 804, 806 (Tex. Civ. App.--1977, no
writ). The trial court filed separate findings of fact, however, that are positive findings supporting
its decree. Because findings of fact filed separately control findings recited in the judgment, we
base our review of the evidence on these separate findings. See Tex. R. Civ. P. 299a; In re M.H.,
745 S.W.2d 424, 426 (Tex. App.--Houston [14th Dist.] 1988, no writ).
3. Even if Doug did not throw Amber across the room, Doug's throwing either of her brothers
would expose Amber to physical danger. Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d 531,
533 (Tex. 1987); In re S.H.A., 728 S.W.2d 73, 85 (Tex. App.--Dallas 1987, writ ref'd n.r.e.).


 the children. Considering the entire
record, however, we conclude that the evidence is not factually so weak, nor the evidence to the
contrary so overwhelming, that the finding is clearly wrong and unjust. We therefore overrule
points eleven and twelve.

 By points of error seven and eight, Lou Ann contests the legal and factual
sufficiency of the evidence to support the trial court's finding that she knowingly placed Brandon
with persons who engaged in conduct that endangered his physical well-being. The record
contains evidence that Lou Ann frequently left Brandon in the care of her boyfriends, who hit
Brandon and one of whom sexually abused him. Even if Lou Ann did not expressly know of this
mistreatment, a reasonably diligent inquiry of the facts she knew, including the sexual abuse of
Amber, would have disclosed it. See Woodward v. Ortiz, 237 S.W.2d 286, 289 (Tex. 1951)
(actual knowledge can be either express or implied). Again, Lou Ann testified that she knowingly
endangered the child