TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00842-CV






Donald Bates, Appellant



v.



Texas Department of Protective and Regulatory Services, Appellee







FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 340TH JUDICIAL DISTRICT


NO. C-96-0453-J, HONORABLE DICK ALCALA, JUDGE PRESIDING







 Donald Bates appeals the trial court decree terminating his parental rights with his
daughter, L.B., and appointing The Texas Department of Protective and Regulatory Services
("Department") as L.B.'s permanent managing conservator. We will affirm the decree of
termination.


FACTUAL BACKGROUND


 Donald Bates and Brandy Lee Bishop (1) are the natural parents of L.B. who was born
on August 23, 1996, when Bishop was fourteen and Bates was twenty-nine. The Department
removed L.B. on September 18, 1996, following the arrest of Bates and Bishop for shoplifting. 
Bates has not had any contact with L.B. since the Department removed her. After L.B.'s
removal, Bates pled guilty to shoplifting and sexual assault of a child, L.B.'s underage mother. 
Bates received a ten-year sentence for the sexual assault charge, which the trial court probated for
five years. Bates began his probation in March 1997 and violated it the next month. The court
modified his probation and ordered him to jail for six months. After his release in December
1997, Bates violated the terms of his probation twice again. The court revoked his probation and
since June 1998 Bates has been serving the remainder of his ten-year sentence.

 After Bishop relinquished her parental rights, the Department asked Bates to do the
same. When Bates refused, the Department sought termination. The trial court found that Bates
knowingly placed or allowed L.B. to remain in conditions or surroundings which endangered her
physical or emotional well-being, and that Bates engaged in conduct or knowingly placed L.B.
with persons who engaged in conduct which endangered L.B.'s physical and emotional well-being. 
See Tex. Fam. Code Ann. §§ 161.001(1)(D), (E) (West Supp. 2000). Bates does not challenge
the trial court's findings that his conduct justified termination. Bates first challenges the factual
sufficiency of the evidence to support the trial court's finding that termination was in L.B.'s best
interest. In his second issue, Bates argues that the Department failed to conduct reasonable efforts
to reunify the family.


DISCUSSION


Standard of Review

 Justification for the termination of parental rights must be shown by clear and
convincing evidence. Tex. Fam. Code Ann. §§ 161.001, 161.206(a) (West 1996 & Supp. 2000). 
Clear and convincing means the measure or degree of proof that will produce in the mind of the
trier of fact a firm belief or conviction as to the truth of the allegation sought to be established. 
In re G.M., 596 S.W.2d 846, 847 (Tex. 1980). On appeal, the appellant may challenge both the
legal and factual sufficiency of the evidence and we review the finding in light of the clear and
convincing burden of proof at trial. Leal v. Texas Dep't of Protective & Regulatory Servs., No.
03-98-00516-CV, slip op. at 8 (Tex. App.--Austin, July 27, 2000, no pet. h.).

 In determining a factual sufficiency challenge, we consider a neutral review of the
evidence, both for and against the finding, and will set aside the judgment only if proof of the fact
is so obviously weak or the finding is so contrary to the weight of the evidence as to be clearly
wrong and unjust. Leal, slip op. at 9 (citing Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986);
Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965)). We will not substitute our judgment for that
of the trier of fact merely because we reach a different conclusion. Westech Eng'g, Inc. v.
Clearwater Constructors, Inc., 835 S.W.2d 190, 196 (Tex. App.--Austin 1992, no writ).


Best Interest of the Child

 Once the trial court finds parental conduct sufficient to warrant termination, the
trial court must then determine if termination is in the best interest of the child. See Tex. Fam.
Code Ann. § 161.001(2) (West Supp. 2000). Factors to consider in deciding the best interest of
the child include: (1) the desires of the child; (2) the emotional and physical needs of the child
now and in the future; (3) the emotional and physical danger to the child now and in the future;
(4) the parental abilities of the parent seeking custody; (5) the programs available to assist the
parent seeking custody; (6) the plans for the child by the parent or agency seeking custody; (7)
the stability of the home or the proposed placement; (8) any acts or omissions of the parent which
may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for
the acts or omissions of the parent. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976);
Spurlock v. Texas Dep't of Protective & Regulatory Servs., 904 S.W.2d 152, 158 (Tex.
App.--Austin 1995, writ denied). The list of relevant factors is not exhaustive; other factors may
be considered when appropriate. See Holley 544 S.W.2d at 372. Similarly, the trial court is not
required to consider all of the factors. See id.

 In the short time that L.B. lived with Bates before her removal, Bates failed to
demonstrate either an ability to care for L.B. or an ability to meet her physical and emotional
needs. Bates testified that he was feeding L.B. during the first few weeks of her life; however,
he did not have her on a feeding schedule. A Department caseworker testified that an infant
should be kept on a feeding schedule. Bates also did not have adequate food or clothing on hand
to care for a small child. At the time the Department removed L.B., the back of her head was
flat, which indicated she had been left in a car seat for long periods of time. Bates also exposed
L.B. to injury by taking her with him when he and Bishop were committing a crime. In L.B.'s
presence, Bates and Bishop shoplifted cigarettes and then tried to sell the cigarettes in a bar. 
Bates testified that he was not concerned for L.B.'s safety and did not feel he was putting her at
any risk. The record does not indicate that L.B. sustained an injury during the incident. 
However, a child does not have to suffer an actual injury; it is enough that the child's well-being
is jeopardized or exposed to loss or injury. Texas Dep't of Human Servs. v. Boyd, 727 S.W.2d
531, 533 (Tex. 1987). Bates admitted that if he were "released from prison today" that he would
not be able to raise L.B. Bates has been incarcerated the majority of L.B.'s life; when he was not
incarcerated, Bates did not visit L.B.

 Bates did not provide a suitable or stable home for L.B. A Department caseworker
testified that Bates' apartment as well as L.B.'s baby crib were very dirty. The caseworker found
pots and pans containing food and maggots in Bates' kitchen. Based on her observations, the
caseworker did not believe Bates was capable of raising a child. She further opined that it would
be in L.B.'s best interest to terminate Bates' parental rights. Another Department caseworker
who managed L.B.'s case testified that Bates lacked the level of responsibility to provide care and
structure for L.B. She also opined that Bates' parental rights should be terminated.

 Bates also failed to provide a stable home for Bishop when she was pregnant with
L.B. He testified that they did not have a home and were "living on the streets" during part of
Bishop's pregnancy. For three months, Bates and Bishop lived out of their car or lived with
friends. Bates did not have steady employment and what money he earned he used to buy cocaine
to support his drug habit. Bates testified that he began using cocaine when he was twelve and has
continued "until now." Although he did not use cocaine while Bishop was pregnant, he started
again after L.B. was born.

 With regard to Bates' future plans for L.B., Bates wanted her to remain with the
foster family or be placed with one of his relatives until his release from prison. He will not be
eligible for parole until 2002. After his release, he says he would like to obtain possession of his
daughter. Bates' relatives live out of state and at the time of trial the Department had not
determined if any of them could provide a satisfactory home for L.B. While such a situation
might be in Bates' best interest, the court is directed to focus on the child's best interest, not on
the best interest of the parent. See Spurlock, 904 S.W.2d at 158.

 When she was three months old, the Department placed L.B. with a foster family
where she has remained. The evidence indicated that L.B. has bonded with her foster family, and
that the foster family has provided L.B. with a good home and a nurturing environment. The
foster mother testified that she and her husband intended to adopt L.B. According to the
Department, removing L.B. would be difficult and emotionally detrimental for her.

 Bates' prior drug use, his relationship with L.B.'s mother who was a minor half
his age, his decision to take L.B. on a shoplifting spree and his repeated violations of the terms
of his probation which resulted in his incarceration indicate Bates is not a suitable caretaker. See
Trevino v. Texas Dep't of Protective & Regulatory Servs., 893 S.W.2d 243, 248 (Tex.
App.--Austin 1995, no writ) (criminal conduct and imprisonment are relevant in determining best
interest of the child). When the only available parent is not a suitable caretaker, the trial court
may determine that transient foster care is not in the child's best interest. D.O. v. Texas Dep't
of Human Servs., 851 S.W.2d 351, 358 (Tex. App.--Austin 1993, no writ). Terminating Bates'
parental rights is in L.B.'s best interest when the foster family she has lived with since the age
of three months wishes to adopt her. It is not in L.B.'s best interest to remain in transient foster
care until Bates' release from prison when he has never demonstrated the ability to be an
appropriate care giver.

 Having reviewed all the evidence, we conclude that the evidence is factually
sufficient to support the trial court's finding that termination of Bates' parental rights is in L.B.'s
best interest. We overrule Bates' first issue.


Reunification

 Bates argues in his second issue that the Department failed to make reasonable
efforts to reunify the family pursuant to 42 U.S.C.A. §§ 671(a)(15); 672(a)(1) (West Supp. 2000). 
In the final decree, the trial court expressly found that "all reasonable efforts consistent with time
and circumstances and pursuant to 42 U.S.C. sections 671(a)(15) and 672(a)(1) were made by the
Department to prevent or eliminate the need for removal of the child from the home and to make
it possible for the child to return home; but, it was not in the child's best interest to return home." 

 We note that Bates has not provided a home for L.B. and while he is incarcerated
there is no family for the Department to reunify. Furthermore, the Department's policy of
providing reunification services does not create a condition precedent to the involuntary
termination of parental rights. See Jones v. Dallas County Child Welfare Unit, 761 S.W.2d 103,
109 (Tex. App.--Dallas 1988, writ denied). We overrule Bates' second issue. 


CONCLUSION


 Having reviewed the record, we conclude that the evidence is factually sufficient
to support the trial court's finding that the termination of Bates' parental rights was in L.B.'s best
interest. We affirm the trial court's decree.



 


 Bea Ann Smith, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: July 27, 2000

Do Not Publish

1. After efforts to reunify Bishop and L.B. failed, Bishop voluntarily relinquished her parental
rights in October 1998. She is not a party to this appeal. 


me and were "living on the streets" during part of
Bishop's pregnancy. For three months, Bates and Bishop lived out of their car or lived with
friends. Bates did not have steady employment and what money he earned he used to buy cocaine
to support his drug habit. Bates testified that he began using cocaine when he was twelve and has
continued "until now." Although he did not use cocaine while Bishop was pregnant, he started
again after L.B. was born.

 With regard to Bates' future plans for L.B., Bates wanted her to remain with the
foster family or be placed with one of his relatives until his release from prison. He will not be
eligible for parole until 2002. After his release, he says he would like to obtain possession of his
daughter. Bates' relatives live out of state and at the time of trial the Department had not
determined if any of them could provide a satisfactory home for L.B. While